GLADNEY, Judge.
This action is for the purpose of obtaining the judicial determination of the boundary between the properties of plaintiffs and defendant situated within Block 13, Town of Mooringsport, Caddo Parish, Louisiana. Van A. Barnett, a civil engineer, was appointed by the court to' locate the line in question and, after attending to the formalities prescribed in Title 5 art. 823 et seq. of the LSA-Civil Code, he returned his report or procés verbal with plat showing the manner in which he executed his work. A motion to have Barnett’s findings approved and homologated was opposed by defendant who relied upon a survey made by George E. Dutton, civil engineer, and who asked that Dutton’s survey be accredited and the disputed line as fixed by him between the separate properties be recognized by the court. The two surveyors reached different conclusions, their lines separating the properties in question lacking twenty feet of coinciding. A hearing was had on the opposition after which the court rendered judgment approving the report of Barnett and fixing the boundary accordingly. From this decree the defendant has appealed.
Plaintiffs’ title -calls for Lot 5 and the east 17.8 feet of Lot 4 of Block 13. Defendant’s title embraces the east 35 feet of Lot 3 and west 32.2 feet of Lot 4 of Block 13, which parcels of land are situated in the Town of Mooringsport, and lie within Section 25, Township 20 North, Range 6 West, Caddo Parish, Louisiana.
The Town of Mooringsport was laid out during the year 1896, the subdivision of which first appears on a plat of “Moorings-port, Caddo Parish, Louisiana”. This appears to be the official plat. It was filed April 15, 1896, and bears the signature of F. A. Leonard, Clerk and Ex Officio Recorder. It was not recorded. On the same day a similar map certified as a drawn copy of the original, was filed and recorded in Conveyance Book 17, page 274 of the records of Caddo Parish. Much of the photo *206 static reproduction of the copy as filed in the record herein is illegible. We find it of no significance in the solution of the problem herein presented. The plat of Mooringsport shows Block 13 as consisting of seven lots, numbered one to seven, counting from west to east. Lot No. 1 is a triangular lot, the apex of the triangle constituting the west corner, whereas the north line of Lot 1 forms a part of a traverse referred to as the “Original Government Meander Line” bearing north 53° 12' west. The north line of Block 13 is shown to be 425.3 feet and extends along said meander line. Again referring to the Mooringsport plat we find, the southeast corner of Block 13 is the southwest corner of a triangular tract of land identified on the plat as owned by E. C. Christian. This same corner also appears to be the south corner of a tract of land hereinafter referred to and described in the Hearne deed dated January 8, 1912.
On March 23 and 24, 1896, J. S. Noel and E. C. Christian transferred with other property to the Town Site Company tracts consisting of 4.6 acres and 5.2 acres respectively. A portion of the Noel property so transferred became Block 13 and Block 14 as reflected on the plat of Mooringsport'. The north line of the 5.2 acre Christian tract was to later become the south line of the Croom Subdivision. The Noel and Christian properties above referred to are indicated on a plat filed April 8, 1896, and which was obviously prepared to identify the Noel and Christian lands donated for the town site of Mooringsport.
A filed and recorded plat dated January 9, 1907, by H. A. Jenkins, engineer, plotted the Croom Subdivision as consisting of nine lots which from east to west are numbered one to nine. The western line of Lot 9 as it appears on the Jenkins plat is a line running north and south and forms an angle of 52° 397 with the north line of Croom Street.
All three of the plats above referred to indicate the southwest corner of Lot 9 of Croom Subdivision and the southeast corner of Lot 7 of Block 13 to be the same corner. The Mooringsport plat also shows the west line of the Christian tract (later embraced in the Croom Subdivision) as a portion of a north-south line extending from the south line of Section 25 along the east line of the Hale property.
Certain deeds or transfers of realty appear of importance in the determination of the east line of Block 13.
F. M. Hearne acquired on July 16, 1907, Lot 9 of the Croom Subdivision as reflected on the Jenkins plat. On January 8, 1912, he also acquired a triangular strip of ground described as follows:
“Commencing at the southwest corner of the Croom Subdivision of the Town of Mooringsport, run due north on the west line of said Croom Subdivision to the north line of the Croom Subdivision, thence southwest on a line being the continuation of the north line of. Croom Subdivision to the northeast corner of Lot 7 of Block 13 of the Town of Mooringsport, thence southeast along the east boundary of said Lot 7 of Block 13 to Croom Street, the place of beginning; being that certain triangular piece of land owned by Est. of C. S. Croom and Mrs. S. E. Nun-ley.”
The acquisition of these two parcels of property purported to give Hearne a tract of land, a parallelogram with its north and south lines 183.5 feet each and its east and west lines as 208 feet each. The west line of the Hearne tract, according to these deeds, constituted the east line of Lot 7 of Block 13. He sold the west fifty feet of this tract on July 13, 1914, to the Mooringsport Masonic Lodge. Hearne sold to W. B. Tullos on February 1, 1917, the remainder of his property, the deed describing the outside bounds of the parallelogram, and then excepted the “fifty feet previously sold off the west side of said lot to the Masonic Lodge.” Tullos, thüs acquired only the east 133.5 feet of the Hearne property. By a later deed the *207 heirs of Tullos were erroneously placed in possession of the land having a frontage of 153.5 feet on Croom Street.
Barnett’s east line of Block 13 located the southeast corner of Lot 7 twenty feet west of the southwest corner of the Croom Subdivision, and thereby creates a twenty foot strip of land west of the-Hearne land. He includes this strip as part of the Masonic Lodge property which, of course, conflicts with the deed from Hearne to the Lodge. Barnett also ascribes to the Tullos lot a width of 153.5 feet, which is twenty feet more than acquired under title. We also object to Barnett’s plat as indicating that the ideal west boundary line of Latimer Street does not coincide with the west line of the Croom Subdivision. For these reasons we find that the surveyor has failed to properly locate the east line of Lot 7 which is the key to the issue here under consideration.
The surveys of Barnett and Dutton are in harmony from the southwest corner of Lot 3 to the southwest corner of Lot 9 of the Croom Subdivision. Dutton does not tie his survey into the south line of Section 25 to show that the west line of the Croom Subdivision is consistent with that line. Nor does Dutton tie in the northeast corner of Block 13 with the southwest corner of Section 25 as set by Captain Kidder in 1914.
Barnett apparently rested his explanation of his east line of Lot 7 upon the finding of an old hedgerow which he concluded to be the west line of the Masonic Lodge property, for he testified it had been so regarded as such for years. W. E. Brooks, who has title to Lot 7 of Block 13, testified the hedge was planted by his mother-in-law about 1923. No other satisfactory explanation was given by Barnett and he insisted that there was a distance of twenty feet between the southwest corner of the Croom Subdivision and the southeast corner of Block 13.
W. J. Warren, a surveyor, testified as to a survey of lots in Block 13 made by him in 1952. His survey places the east line of Block 13 apparently in the same location as fixed by Dutton. To prove the location of the northeast corner of Block 13, Warren ran from the southwest corner of Section 25 north 79° 906' to a point near the center of the Greenwood Road, from which point he proceeded 253.1 feet to the west corner of Block. 13, thence 425.3 feet to the northeast corner of Block 13. Thus, from the point in the Greenwood Road Warren traversed 679 feet to the northeast corner of Block 13. Barnett arrived at this same distance by commencing at a point located on the West line of the Greenwood Road and over the same traverse arrived at a point where he located the northeast corner of' Block 13, some twenty feet to the west of Warren’s corner.. The northeast corner of Block 13 as located by Dutton, is 679 feet from an undesignated point to the west. He does not give its location or correlate the line with the southwest corner of Section 25.
In a case recently considered by this court, entitled Flanagan v. Elder, La.App., reported in 90 So.2d 540, we had occasion to consider property situated in the northeast corner of the Hale property (across Latimer Street from Block 12 bounded on the east by Latimer Street and on the south by the south line of Section 25). In that case Barnett and Dutton were expert witnesses. Both found the southeast corner of the Hale property to be 1,584 feet east of the southwest corner of Section 25. A line extending north from this point and drawn at right angles with the section line should establish the ideal west line of Latimer Street, the west line of Lot 9 of the Croom Subdivision and the east line of Block 13.
Our findings are: (1) the Barnett survey is not acceptable; (2) we are reluctant to accept the Dutton survey because it is not correlated with the southwest corner of Section 25, nor with the south line of Section 25; and (3) we cannot accept a^ satisfactory the survey of Warren because *208 of his unsatisfactory location of the west point of the traverse along the north lirie of Block 13. .Proof of his survey seems to depend on this line. The west point as so located is different from the Moorings-port plat, the plat of the donation of the Noel property, and the plat of Barnett in the instant case.
Due to the expense which would be entailed in a new survey, we are remanding the case for a hearing at which additional evidence can be adduced by either side in order to arrive at a more satisfactory conclusion.
For the reasons hereinabove assigned, the judgment is annulled, reversed and set aside, and the cause is remanded for a new trial, all accrued costs to be taxed after the final outcome of the case.
HARDY, J., absent.